Case numbers 21-57-23 and 22-53-61 Bliss Collection LLC versus Latham Companies LLC. Oral argument not to exceed 20 minutes per side. Ms. Overman you may proceed for the plaintiff. Good morning. May it please the court. My name is JC Overman, attorney for Bliss Collection, appellant in 21-57-23 Bella Bliss's appeal on the merits and of Appley in 22-53-61 Little English's appeal on attorney fees. I'd like to reserve four minutes for rebuttal. Very well. Trademark and trade dress infringement claims require a multi-factor fact-intensive test to essentially determine whether there exists a likelihood of confusion as to the source of the relevant goods. Bella Bliss adequately pled multiple of these factors and the district court did not take all facts to be pleaded as true and inferences drawn in Bella Bliss's favor when it changed its mind and granted Little English's motion to dismiss only upon reconsideration. Counsel, it seemed to me reading to the district court's opinion that it seemed to turn upon at least for the trademark infringement claim of that finding that there was not sufficient allegations of confusion or likelihood of confusion between the marks that instead all was pleaded was a likelihood of confusion as to the product. So can you address that because that seems to be the central, at least in my mind, the central tenet of why the district court dismissed the trademark infringement claim. Absolutely. Your Honor, I think it's important to remember that this is a parsing apart why some of the confusion might have happened and it is our position that that is inappropriate for a district court to do at a motion to dismiss to parse apart the why. And in fact, I'm sorry, go ahead finish your answer. And in fact the similarity of the goods should not be something that weighs against Bella Bliss in this instance as that in and of itself is a analysis and one when the goods are similar weighs in favor of the plaintiff not against the plaintiff. Sure, but the we're dealing that we have a statute here, right, and the statute that governs says that you have to have at least a color, the marks, because that's what we're worried about is protecting your mark, have the that little English's mark has to be a colorable imitation at least, a copy, a reproduction, or a colorable imitation of the mark. So if you can't, if the district judge looks at it and says well this isn't doesn't meet that standard, no reasonable jury could believe that the one mark is a colorable imitation of the other, why can't the, why can't, why does this claim go to discovery? The marks aren't going to change, they are what they are. Your that's actually relevant to the. Is there any case in which a court has found that the marks are not similar but the other seven factors trump? I, there's not a particular case that would be on the facts that we have here since it's so fact-intensive, so I would suggest that the similarity is a sliding scale and if certain of the factors have more evidence to support it that that is the purpose of the discovery phase to ultimately see on the balance whether the likelihood of confusion exists. And it, I would submit that you know in certain instances like here where the mark has changed over time to become more similar and that there is actual confusion and that there is a near same, the consumers are confused and not able to parse apart the source of the goods and that is what the trademark infringement analysis, trademark infringement is intended to protect. That the consumers aren't confused by the source of the goods and here when the consumers are confused and that I, the mark itself is not distinguishable enough to, that no consumers, consumers are confused that that's the purpose of the seven factors for that to bear out. I guess I'm just wondering is it your position that a district court could never, I mean I understand you think the marks are similar just looking at them, I get that, but is it your position that a district court could never grant a motion to dismiss just by looking at the mark? So like my example is going to be baby clothes, one has a label that's like a skull and crossbones, like I don't know it's appealing to a certain parent and then, and the goth parent maybe, I don't, I don't know what that means, but and then you know the other one's a baby carriage, okay? And so these are the marks. A district court could look at that and say like there's no reason to send the baby carriage company that has that mark through expensive further litigation. Absolutely not, Your Honor. I agree with you in that example that if the marks are that dissimilar that upon looking that there would be no, no confusion that I think a court would be within its abilities to determine that. I don't think that the case law, Hensley for example, in particular would prevent a court from doing that assuming that none of the other seven factors were pled or have any colorable reason for the court to... But if the other factors were pled, if they said like, oh well some people mistag our things on social media or whatever else you've said in this case, that would be enough. So you're saying a district court really never can treat this factor as dispositive? No, Your Honor. I'm not saying that a district court couldn't. I do think that again there are seven factors and that the likelihood of confusion is contingent upon the analysis of those seven factors to determine whether there is someone who could determine and that discovery would bear out the likelihood of confusion could exist. So what will happen in discovery? I mean these marks are what they are. They're never going to change. So in discovery what do you hope to find out that will strengthen your case? Your Honor, the discovery that would incur after this would be on those seven factors and so the discovery would be particularly into at the time of pleading you don't know the defendant's intent. That is one of the seven factors that could be impactful. If the defendant is trying to get, let's say the defendant admits, yeah I'm trying to get my mark closer to Bella Bliss's mark. I want to look more like Bella Bliss. But they're really bad at it. So like they start with a skull and crossbones and you have a baby carriage and then they make the skull and crossbones pink and your baby carriage is pink and they're like, see I tried to be more like them and you're still like, well that's still ridiculous. You're still really far away. How can intent ever be the trumping factor? Your Honor, I don't think any one is a trumping factor. I was just getting started. That would be one of the elements that plaintiffs would be looking to have discovery on. In terms of the confusion, surveys are very common. Evidence from the actual consumers related to some of the evidence that we pled would be very common. So it would be a pursuit of actual confusion evidence and whatever means that there is no trump card, but this court has said that is the best evidence. And because the plaintiff might not have had it at the pleading stage does not mean that through the course of discovery the plaintiff wouldn't have it at the point of trial. A lot of times that type of evidence isn't even appropriate for a court to decide on summary judgment. But it would have to be evidence that the marks may cause the confusion, right? Because just the fact, putting aside your trade dress claim, that the clothes look the same doesn't matter. The marks on the clothes have to be what's leading to the confusion, right? Because that's all we're trying to protect with trademark is your mark. Yes, Your Honor. The point of trademark protection is to protect the mark and ensure that the consumers aren't confused about the source of the product. The similarity of the products is one of those factors that would lead a consumer to be confused about the goods. And it's all about the source. So if the consumers are confused about who made the product, that is what is intended for this statute to protect. Well, it's possible for consumers to be confused simply because the designs of the clothing look the same, right? Without regard to what the mark is. Anything is possible, Your Honor. But if the marks are so dissimilar, then I would submit that the consumers wouldn't be confused in that instance because it would be clear. This court has held, for example, in Abercrombie that in that instance the marks were so dissimilar and slapped on every single catalog that was submitted that the in that instance the balance of the factors would go the other way. But on the facts of this case, the consumers are confused and it is this court's proper... this plaintiff should be able to learn through discovery. Again, we are not at a post-trial motion stage here that this is the extent of the evidence that is uncovered here about the source of that confusion and the extent of it. Have you completed any specific example where a consumer was likely to be confused or actually confused by the mark as opposed to just the design of the clothing? Your Honor, we don't know why these consumers were confused. What we do know is they were confused as to the source of the goods and it would be through the discovery process that we would better understand what led them to that I don't believe there is an actual logo of Little English in any of the pictures. I think there is one picture that has Bella Bliss logo hanging off of it. That's all there is as far as the actual examples and I think your position, you're arguing that it's not necessary to plead that. That as long as you've pled likelihood of confusion, you don't have to plead that it directly comes from confusion over a mark. It's just confusion, general likelihood of confusion of the customers and then you can go into discovery then and determine whether or not it's because of the mark or because of something else. I might have misspoke, your Honor. We did plead that the marks are identical and they are apparent to the consumers when the consumers are seeing the product. The pictures themselves I do not believe had a depiction of Little English's actual logo. What particular paragraphs of your amended complaint are you relying upon to plead likelihood of confusion over the marks? I'll have to get back to you with that one, your Honor. I do believe that Little English in particular did say that when seen on clothing garment tags, these logos appear nearly identical in nature and are very likely to cause consumer confusion between the brands in Amendment Complaint 89. Is that all you got at this point? I do think that's the most succinct characterization of that allegation. But again, it's a make that allegation plausible? Correct, your Honor. It is the allegations are taken as a whole and not location specific and that as a whole inferences drawn in favor of Bella Bliss would support this has been pled. Yes. What about your trade dress claim with respect to the blue color? I'm a little I don't even know. Do you have a trademark claim and a trade dress claim on the blue? The trademark that is federally registered, one of them now includes the Bliss blue color. So that is one to your particular stitching design of the bead? Correct. But Bella Bliss also has common law rights in its use of its mark. So the trademark claims are not just contingent upon that federal registration that includes blue. In terms of trade dress, the Bliss blue allegation is related to the trade dress that is in its website, its social media pages, on hang tags. So it's the use of the Bliss blue not on products or limited to the trademark, but the use of Bliss blue in those things that I identified. What have you pled with regard to the trade dress being non-functional? In terms of the trade dress being non-functional for the product designs in particular, the pleadings were both the description, the very artistic and aesthetic description of the scope of the trade dress in addition to the pictures themselves. So this court has articulated in Lanard in particular that the pictures themselves are enough for a court to understand that there are non-functional aspects. What we have here is an articulated aesthetic aspect to the scope of the trade dress in and of itself that makes this case even more than what this court has held in the past. What have you pled about the Bliss blue color being non-functional as it relates to the trade dress claim? The Bliss blue color itself, considering it is not part of the products, has a different standard in terms of the non-functionality. It can be instinctively descriptive in a way that the non-functionality analysis is the non-functionality aspect is that again it's completely detached from functionality of goods. So color in itself, so long as it has secondary meaning, then it can be held to be non-functional and therefore a trade dress. And what have you, I'm sorry I see your light is on, but what have you said about the non-functionality aspect to secondary meaning other than saying it has secondary meaning? In terms of the Bliss blue, your honor? Yeah. In paragraphs 56, 57, 58, and 59, Bella Bliss pled things such as the extensive advertising expenditures in connection with this Bliss blue, the use of the use and exclusivity of the color is some of the factors and where that was pled, your honor. Okay, thank you Ms. Overman. Mr. Zilkey? Good morning, your honors. I'm Larry Zilkey and I represent Latham companies in this case. You've raised some great issues, many of the same issues that we've raised. I want to start with one though that I think is right on point. It's the Sixth Circuit case concerning these lubrication devices. Grunderville versus a company that manufactured these automatic grease systems and they looked identical. The whole case of that that came to the Sixth Circuit was they look identical. How can you tell one from the other? Well after they analyzed everything, the court ruled that there's nobody, there's a reasonable person, who could differentiate Grunderville mark versus the other mark. They're completely dissimilar. And so the court said there's no trademark infringement. And so that's the history of this. And in fact, your honor, when you look at the trademarks, which I know you have in your record, one says Bella Bliss, the other one says Little English. Now even the district court judge at first said, I can understand looking at those how anybody can say, oh it says Bella Bliss, that must mean Little English. It's a non sequitur. There's no authority for that whatsoever. Yet that's what they're arguing. That someone has to look at Little English's trademark and say, oh that must mean Bella Bliss. It's beyond reality. And that's why this is one of those cases that a 12B6 is fitting. Because there's nothing there. Have they pled that these are associated marks? Such as, you know, like Chaps and Ralph Lauren Polo, those are associated marks. They have not, your honor. They haven't pled that? They have not. In fact, what I'm worried about somewhat here is that we went back into the district court judge knowing that she even wrote that we understand that anybody can look at these two marks and say they're completely different. But I'll let that case go forward. We did a motion for reconsideration, as you all know. And in that motion for reconsideration, we said, your honor, you're looking at the wrong test. They were looking at the test as to the product and how it looks similar, not the mark. And there's the big line of demarcation. We're talking about similarity or dissimilarity of the trademark, not of the goods. Classic children's clothing generally look the same. They all have little animals on them, and this one does too, snails and all sorts of things like that. But they're missing the point when... There are tons of cases out there, aren't there, that where the case has gone beyond the pleading stage where the infringing mark didn't have the same name on it as the infringed mark. Wouldn't you agree that there are cases out there where alleged infringing marks went past the motion to dismiss stage, even though they didn't have the same name as the original mark? Some do, but not when they're so certain. And that's what the court has ruled in Gordonville. There's no rational person can look at one of the marks and say, oh, that means the origin is Bella Bliss. That just doesn't work. So in that case, Judge Bush, there's no way, there's no case like that that you're talking about. And in fact, going to the... But then why aren't there a lot of cases where we see this happen in this posture? So there aren't very many where a district judge looks at the two marks and says, hmm, those look really different. I don't think any reasonable person could be confused and think these are the same. Therefore, I dismiss. There's one, I think, from the Southern District of New York, and I believe there's one from a court in California. But you would think that if this were something that was appropriate for a district judge to do, that we would see a lot of them. Why aren't there? I think because the intellectual property bar knows better. I don't think they're going to undertake a trademark in a copyright case, we haven't talked about copyright, with those facts. That indeed, the marks are so dissimilar, and I'm looking at what the court said, it's impossible to imagine anyone would confuse Bella Bliss with little English marks. That's a reconsideration. To which we defer. I mean, I think we have case law that says at the judge, the district court has gone through all the Frisch factors. We say all the subsidiary factors we review for clear error, but the overall decision on likelihood of confusion we review de novo. I think there's a circuit split on that, but that's our law. So, how do we review what the district court said here in this posture? Again, I think it's the way she analyzed the entire complaint. She found... Is it clear error? Are we reviewing de novo? De novo. This is a 12B6, it's a de novo analysis, but the court... On summary judgment, her same assertion that no reasonable person could believe that these marks are similar, I think our case law would say we would review that for clear error. I think it would, but I'm at the 12B6. Oh, so you... Okay. I'm on the 12B6. I misspoke. But I'm on the 12B6, which is de novo. But again, I think the district court judge... You know, the way she set this up was perfect. She went through... They also sued on copyright, as you know, and on trade dress. And they got it all wrong. They've co-mingled the terms. It's not the look of the children's clothes that talks about origin, it's the marks. And there's nothing in these marks that would indicate one is different of the origin than the other. It's either going to be ours or theirs. But there's no way you can look at ours and say that means theirs, and vice versa. That's why this case, of any case that you've had, just shouts out for a 12B6. And... What about the fact that she says, and has some evidence, that people were confused? There's actual confusion. They're confused when they see just the trademark. They're using the confusion element improperly. So what you think they would have to plead is, when people look at these marks, they have been confused. Of the origin, that's right. About the origin. That indeed, little English origin... I'm confused. I look at a little English tag, and it doesn't tell me about any origin. But I'm going to say, well that must mean Bella Bliss. Again, it's a non sequitur. I don't think there's any case as clear as this case about why the motion to dismiss was granted and should be sustained. They did the same thing, Your Honor. Let me read the thing about, in the brief when we did the reconsideration, about the failure for them to plead, and I think trade dress, I think Your Honor asked about it. And in there it says, although plaintiff has included images of its alleged trade dress in its amended complaint, the images do not rescue plaintiff's trade dress claim because the court cannot distill from the images the plaintiff claims to be protected trade dress or identify what was non-functional. Then there's a long footnote. They say that they pled non-functionality, and we all know that that's an element of this, of trade at all. Now, that's seldom you run across something like that. Again, it's support for the 12b-6. Her argument is that that can be implied from the pictures. But then the judge comes back and says, the pictures, it doesn't tell you enough because you don't know which part, which part is the one that is trade dress just by looking at the picture. So it says it does not allege any non-functionality with respect to trade dress. In plaintiff's response, it argues that Della Bliss trade dress is not aesthetically functional. They cite paragraphs of the amended complaint, but then the court says they're mistaken. I look at these paragraphs, and they don't say what you're saying they say. This is one thing after another like that, Your Honors. What's your argument regarding non-functionality as it relates to the Bliss blue color? In terms of that, what they've done is really limited when they use the blue part of the image. Because now, if someone comes in with a red background or a pink background, because I think blue is for the girls and pink is for the boys, pretty common sense of the use of the color, that in that case it's more of a limitation. And so that limitation works against Bliss, not us. So I don't think there's any real evidence right now that the color, and then this is a particular color of blue, not generic blue, and I think Justice Scalia actually wrote that color is almost inherently impossible to be distinctive because it's so general. And so you would have to go through and find out if indeed the color has taken on secondary meaning. But there's nothing here about the color and secondary meaning. The color doesn't mean anything. So a claim for attorney's fees, what's your argument that this is an extraordinary case or that it's a bad case? It is, Your Honor. It's the Octane case that the Sixth Circuit, I think, wrote. And the Octane case says in order to get attorney's fees, we already received attorney's fees for copyright. Although it was approved, the copyright fees. In terms of the Octane case, exceptional is the standard, an exceptional case. You have in front of you a very exceptional case, a very exceptional case. It's exceptional because you get to look at the motive of the person who's bringing the claims. In this case, Bella Bliss set out on a scheme to destroy Little English. I'm saying destroy it. That's what they were pursuing. You all used to be owners. Then they bought out our client. And after they bought that out, they started to compete. Within one year of competing, they filed a federal lawsuit, Eastern District of Kentucky, trying to stop them as a case. Judge Coffman, who was a sitting judge back then in Lexington, ruled that indeed there's no non-compete, there's no obstruction whatsoever in terms of limiting them from competing. So she denied a preliminary injunction. But the motive was there. In fact, what happened next? The next thing that happened is they filed another lawsuit. And then they interfere with our manufacturer. These are extraneous facts, but they go to the heart of the motive in this case. Bella Bliss wants to destroy Little English. And that's a bad motive. When did the changes in the trademark start occurring? Was that after this prior litigation or was it before or during? It was during. The trademarks have been around forever. Why didn't Bliss sue for trademark infringement at that point? They thought they had it already by the suing for the issues about leaving the company. I'm asking the wrong counsel that. I should have asked Bliss that question. Yes, Your Honor. But that's what they could have done. But they went in by arguing that there was a sale of goodwill. And goodwill would have prevented Little English from competing and would prevent Little English from alleging any kind of trademark. So then they interfere with the manufacturer, which is the sower of these women's outfits or children's outfits. And then they lost that one. So then finally we filed a lawsuit against them for tortious interference with our manufacturer. And what did they do? They filed this copyright trademark case. And I have to say, Your Honor, the evidence here is bad faith. And that's why this is an exceptional case, to answer your question. You brought your case in state court? Yes, Your Honor, in Fayette Circuit Court. Could they have alleged that as a counterclaim? They made no counterclaim. But they could have. Yes, Your Honor. Yes, never did. They instead filed this lawsuit that we're fighting today. And again, it's all a scheme to basically ruin Little English. To ruin them as a competitor. They haven't done it with anyone else. They're just upset that there is this purchase of her interest and now she's a competitor. And they can't stand it that she's a competitor on the right basis. When the district court judge went through all the little animals and took out the scenes of fare and the things that are not protectable under copyright, she then analyzed each figurette. And a lot of these things are anthropomorphic. Yes, but the copyright claim isn't before us. That was dismissed and it hasn't been appealed. It has not been appealed, you're right. But I think it goes to the heart about the attorney's fees though, Your Honor. We cut our attorney's fees in half. And so we're thinking that that's not correct. You're cutting half of your work to be to the copyright and half to everything else? The half on everything else. The ones that were co-mingled were interplayed so much that you could not separate them out. Inextricably interwoven. But that happened as well. And so we're asking that basically reinstate the entire fees demand minus the work to get the documents put together. And that should be the award. Okay, do you have any more questions? I don't think we have any more questions. Do you have anything else to present? No, Your Honor. Okay, so you reserved two minutes. So that would need to be limited to the issues regarding attorney's fees. Your appeal for that time. Yes, Your Honor. So you've said everything you want to say as far as their appeal at this point. I do. Okay, thank you. Ms. Overman. I think it's important to correct the factual and legal positioning of the Groenfeld case that opposing counsel brought up. Groenfeld is a trade dress claim, not a trademark case, in which functionality was at issue and it was based upon a utility patent. So when the court held in Groenfeld, it was non-functional. We are talking about a utility patent industrial product that was at issue. It is not clothing. It is not in the vein of the functionality and aesthetic pleadings related to this case. So there is no trademark claim in Groenfeld at all? Correct. And even more importantly potentially for purposes of a 12B6, that was a judgment after trial. It was based on a JMOL. What particular trade dress are you claiming has been infringed besides the blue? There are six product designs at issue in this litigation that were specifically identified in the complaint, which differentiates this case from trade dress holdings that are determined to be non-functional. For example, Abercrombie could not have trade dress protection over clothing designs that were described as active line of clothing. That was not specific enough to hold a trade dress protection. Cases in which... on the clothing that you say are trade dress here, that is the difference between this case and Abercrombie? Correct. Correct. And in those instances where there is secondary meaning described and a specific scope that has been articulated, those cases go forward. And as far as non-functionality goes, since you have identified what the trade dress is and you have evidence of, or you've alleged likelihood of confusion from some of these instances, you're saying that's enough to show non-functionality? You don't really have an explicit pleading as to non-functionality, it doesn't seem like. Correct. Your Honor, the word non-functional does not appear in the complaint specific to the trade dress product designs. You are correct there. However, of course, we all know location in a particular pleading is not the be-all to end-all, and aesthetic description of the scope is enough in addition to the pictures. Independently, those two would be enough. In this case, Bella Bliss pled both. With my last minute here, I do want to touch on the attorney fee issues, Your Honor. As we all know, there is a different standard for copyright case attorney fees and trademark and trade dress Lanham Act case attorney fees. And here, it is Little English's position that those should be one and the same. Why didn't you just bring these claims as a counterclaim in that state court case? As you know, Your Honor, the federal courts are who has jurisdiction over intellectual property claims. So this is not a wrong forum. You had jurisdiction to hear the claims? Is that what you're saying? Yes, Your Honor. The federal court is available for these types of claims. But do we have exclusive jurisdiction? No, Your Honor. But that does not mean that this... You're saying that's not bad faith that you chose a federal forum over a state forum to litigate that claim? Absolutely not, Your Honor. They haven't argued that you're stopped. Correct. There's no res judicata. There is no estoppel argument. There is no statute of limitations. There is no latches. There is no objective position or evidence that would suggest that this was an inappropriate move. Okay. Well, thank you, Ms. Overman. Mr. Zilkey, do you have a rebuttal? Thank you, Your Honor. Very briefly, the Lanham Act, and you're right about the difference in attorney's fees between copyright and Lanham Act. The Lanham Act, though, was being judged and interpreted too harshly. So the Supreme Court came back and said, no, it's really just simply a case that needs to be analyzed on a case-by-case basis, which is what we're asking you to do, case-by-case basis. Look at the totality of the circumstance, and the totality shows direct interference every step of the way in trying to destroy a competitor. That's why this is an extraordinary matter, and they should not, and the district court should have allowed the attorney's fees to go forward. Thank you. Okay, thank you. Thank you to counsel. The case will be submitted. The clerk may call the next case.